**KRAMER ALBERTI LIM
& TONKOVICH LLP**
Robert F. Kramer (SBN 181706)
rkramer@krameralberti.com
David Alberti (SBN 220625)
dalberti@krameralberti.com
Sal Lim (SBN 211836)
slim@krameralberti.com
Russell S. Tonkovich (SBN 233280)
rtonkovich@krameralberti.com
577 Airport Blvd, Suite 250
Burlingame, CA 94010
Tel: 650 825-4300
Fax: 650 460-8443

Attorneys for Plaintiff
Polaris PowerLED Technologies, LLC

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>VIZIO, INC., HON HAI PRECISION INDUSTRY CO., LTD. D/B/A FOXCONN TECHNOLOGY GROUP, COMPETITION TEAM TECHNOLOGY USA INC., TOP VICTORY ELECTRONICS (TAIWAN) CO. LTD., TOP VICTORY INVESTMENTS LTD., TPV TECHNOLOGY LTD., TPV INTERNATIONAL (USA), INC., TREND SMART AMERICA, LTD., INNOLUX CORP., INNOLUX USA, INC., AMTRAN TECHNOLOGY CO., LTD., AMTRAN LOGISTICS, INC., and NEWEGG, INC.,<br><br>        Defendants. | Case No. 2:23-cv-03478-GW-PDx<br><br>**DECLARATION OF THOMAS L. CREDELLE IN SUPPORT OF PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br>Judge:    Hon. George Wu<br>Courtroom: 9D<br>Date:     March 18, 2024<br>Time:     8:30 a.m. |

## TABLE OF CONTENTS

I.    QUALIFICATIONS AND PROFESSIONAL EXPERIENCE .......................1

II.   REFERENCED EXHIBITS..............................................................................1

III.  BACKGROUND ...........................................................................................2

IV.   CLAIM TERMS ............................................................................................3

    A.    Term No. 1: "staggered PWM brightness control signals" / "staggered pulse width modulated (PWM) brightness control signals" (claims 1 and 14) ..............................................................................................3

    B.    Term Nos. 2 and 5: "a duty cycle substantially corresponding to a duty cycle of a PWM brightness control signal applied to it" (claim 1) / "at substantially the same duty cycle" (claim 14) .......................................5

    C.    Term No. 4: "applying a different staggered PWM brightness control signals to each current set circuit" (claim 14)........................................8

    D.    Term Nos. 6 and 7: "wherein applying a different staggered PWM brightness control signal to each current set circuit comprises" (claim 16) / "applying a different staggered PWM brightness control signal to each current set circuit comprises applying each staggered PWM brightness control signals to an associated transistor" (claim 17) ................................................................................................11

DECLARATION OF THOMAS L. CREDELLE IN SUPPORT OF PLAINTIFF'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF – Case No. 2:23-cv-03478-GW

I, Thomas L. Credelle, declare and state as follows:

1.    I am over the age of eighteen years and competent to make this declaration. The facts stated in this declaration are of my personal knowledge, and I know them to be true and correct.

2.    I have been retained as an expert witness by Polaris PowerLED Technologies, LLC ("Polaris") and have been asked to provide my expert opinions regarding U.S. Patent No. 7,843,148 (the "'148 patent"), which I understand has been asserted against all Defendants in this litigation.[1]

3.    I submit this declaration in support of Polaris' responsive claim construction brief, and in response to Defendants' Opening Claim Construction Brief [Dkt. 69] and the Declaration of Michael N. Gershowitz in support thereof ("Gershowitz declaration") [Dkt. 69-3].

## I.    QUALIFICATIONS AND PROFESSIONAL EXPERIENCE

4.    My qualifications and experience were set forth in my prior declaration. Dkt. 70-9.  I incorporate by reference as if fully set forth herein.

## II.    REFERENCED EXHIBITS

5.    In this responsive declaration, I discuss several documents that were submitted by VIZIO, Inc., with the pending *inter partes* review ("IPR") petition IPR2024-00073 for the '148 patent.  In particular, the following are pertinent to the discussion herein:

6.    The Declaration of Dr. Regan Zane ("**Zane IPR Decl.**") dated October 19, 2023, submitted as Exhibit 1003 to the IPR petition, a true and correct copy of which is attached hereto as **Exhibit A**.

---

[1] "Defendants" as used herein collectively consists of **(1)** *VIZIO, Inc.*, **(2)** *Foxconn* (Hon Hai Precision Industry Co., Ltd, and Competition Team Technology USA Inc.), **(3)** *Top Victory* (Top Victory Electronics (Taiwan) Co. Ltd., Top Victory Investments Ltd., TPV Technology Ltd., TPV International (USA), Inc., Trend Smart America, Ltd.), **(4)** *Innolux* (Innolux Corp., Innolux USA, Inc.), **(5)** *AmTran* (AmTran Technology Co., Ltd., and AmTran Logistics, Inc.), and **(6)** *Newegg, Inc.*

7.      U.S. Patent No. 5,317,307 ("***Thomas reference***") that was submitted as Exhibit 1005 to the IPR petition, a true and correct copy of which is attached hereto as **Exhibit B**.  Defendants allege the *Thomas* reference is prior art to the '148 patent.

8.      A graduate school article coauthored by Dr. Zane entitled "Digital Architecture for Driving Large LED Arrays with Dynamic Bus Voltage Regulation and Phase Shifted PWM" ("***Zane article***") that was submitted as Exhibit 1006 to the IPR Petition, a true and correct copy of which is attached hereto as **Exhibit C**.  Defendants allege the *Zane article* is prior art to the '148 patent.

## III.    BACKGROUND

9.      The '148 patent teaches staggered PWM brightness control signals that are connected to current set circuits to reduce ripple and noise from the power supply.  These control signals are typically digital on-off signals with an output voltage capable of turning on or off a current control transistor (*e.g.*, transistors 68 and 72 in Fig. 5 and 6 respectively) that controls current flow to an LED or LED string. An example of a PWM signal is shown in Fig. 2B, reproduced and annotated below.  The width of the ON pulse is designated as PW. The repeating period of the PWM signal is often called the period. The duty cycle can be expressed as the percentage of the ON time compared to the repeating period or Duty cycle (%) = (PW/Period) *100. *See* '148 patent at col. 2:10-18.



Fig. 2B

'148 patent at Fig. 2B (annotated).

10. The PWM brightness control signals may be derived from shift registers 40 (Fig. 2A) with various taps to provide shifted outputs to current set circuits. The spacing of the taps may be "equal, random, or shaped, depending on the number of parallel paths and the current drawn by each path." '148 patent at col. 4:3-62.

11. The '148 patent also discloses that the frequency of LED light pulses "should be above 100 Hz (period = 1/frequency) to avoid noticeable flicker in the LEDs." '148 patent at col. 4:37-38. There is no requirement that the individual parallel paths of LED have the same frequency. For example, as illustrated below, different parallel paths of LEDs can have the same duty cycle but have different periods and be out of phase with each other. The three illustrated PWM brightness control signals are different from each other and out of phase, however the '148 patent teaches that the signals in each path may be in phase or out of phase. '148 patent at col. 4:63-64.



IV. **CLAIM TERMS**

A. **Term No. 1: "staggered PWM brightness control signals" / "staggered pulse width modulated (PWM) brightness control signals" (claims 1 and 14)**

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "staggered PWM brightness control signals" / "staggered pulse width modulated (PWM) brightness control signals" | Plain and ordinary meaning. | Identical but phase-shifted PWM brightness control signals |

12. As described above in Section III (Background), the PWM brightness

3

control signals do not have to be identical since separate PWM signal generators may be used that have different phase shift or different periods. The patent specification teaches several embodiments that use shift registers to generate staggered PWM signals but discloses that "other circuits may be used to create the staggered PWM signals" ('148 patent at col. 3:6-34), and "the PWM brightness control unit … may be any other circuit that operates to stagger a PWM signal." '148 patent at col. 5:54-56. A POISTA would therefore have understood that a PWM signal control unit could have different PWM signals applied to each current set circuit. As an example, shown below, the PWM pulses can be staggered in time and have the same duty cycle but have different frequencies.



13.    Further, the '148 patent teaches that "[i]f the driver drives many parallel paths, some paths may be driven *in phase* and other paths driven *out of phase*." '148 patent at col. 4:63-64 (emphasis added). If all the PWM brightness control signals had to be *identical*, they could not be both in phase and out of phase. A person of ordinary skill in the art ("POSITA") would have understood that an LED driver that generates staggered current pulses to each parallel path of LEDs does not require a single PWM generator that is simply phase shifted; further, the PWM pulses can be staggered in time and be "out of phase with each other" as required by claim 1 as shown above, even though they will occasionally be in phase depending on the

frequencies of the pulses.

14. In support of Defendants' position, the Gershowitz declaration asserts that "staggered" requires PWM signals have the same duty cycle but be out of phase. Dkt. 69-3 (Gershowitz 1/29/2024 Decl.) at ¶¶ 46-48  He further states that "[t]he purpose of the invention is also served by the use of *identical*, but phase-shifted PWM brightness control signals. *Id*. at ¶ 51 (emphasis added). I disagree with his narrowing assertion that the staggered PWM brightness control signals must be identical.

15. As I described above, a POSITA would understand that the PWM brightness control signals may have different frequencies with the same duty cycle or different duty cycles with the same frequency or may have more complex waveforms. That the embodiments show staggered pulses with the same duty cycle does not mean that the claim is limited to staggered but *identical* PWM pulses.

### B. Term Nos. 2 and 5: "a duty cycle substantially corresponding to a duty cycle of a PWM brightness control signal applied to it" (claim 1) / "at substantially the same duty cycle" (claim 14)

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "a duty cycle substantially corresponding to a duty cycle of a PWM brightness control signal applied to it" / "at substantially the same duty cycle" | Plain and ordinary meaning. | Indefinite |

### (1) *Defendants' assertion that "substantially" is indefinite.*

16. The Defendants assert that these phrases are indefinite apparently due to the presence of the word "substantially." If so, they are incorrect. The specification of the patent gives meaning to "substantially" that would be well known to a POSITA at the time of the invention. It was (and is) well known that electronic components such as resistors, capacitors, inductors, oscillators, and the like have tolerances in manufacturing. Circuit designers understand that real circuits use components such

5

as transistors, resistors and capacitors that have variations in resistance and capacitance that can affect timing of pulsed signals. Because of this "RC" delay, components will be selected that accomplish the set goals of the circuit without adding additional cost; for example, precision resistors (resistors with vary accurate values) cost more than higher-tolerance resistors, but higher-tolerance resistors may accomplish the goal of the circuit even if a voltage value is not precise. In addition, it was well known to a POSITA that line resistance and capacitance can vary across the backlight in high brightness LCDs (such as large LCD TV) due to the spacing of LED strings. This additional resistance and capacitance can further change the pulse width and therefore the duty cycle of the current flowing in the strings of LEDs, but it will still be substantially the same as the input pulse width.

17.    The specification gives a clear example of such a tolerance in describing the circuit in Fig. 6 which describes a current set circuit 70 comprising a resistor Rset and MOSFET 72 supplied by Vout from the LED driver 50. '148 patent at col. 6:7-16. Due to tolerances in components used in the LED driver 50, the output voltage Vout will not be absolutely constant, but a POSITA would understand the patent teaching that the output voltage Vout is "**substantially** constant;" that is, within acceptable tolerances to still perform the LED driving function.

18.    Similarly, the output duty cycle of the current that is controlled by the peak set circuits and flows through the LED strings may be slightly different than the input duty cycle of the PWM brightness control signals from the dimming control block 40/46, which are digital signals. As an example, if line resistance and/or line capacitance or MOSFET characteristics are not uniform between parallel paths of LEDs, the pulse width, and hence *output* the duty cycle can vary due to variations in pulse width but still be substantially the same as the *input* duty cycle. For instance, the duty cycle of the input PWM brightness signal is $PW_0$/Period while the output duty cycle of the actual current flow in the LEDs is PW'/Period due to differences in on and off times for switching transistor, RC delay, or temperature variations; the

DECLARATION OF THOMAS L. CREDELLE IN SUPPORT OF PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF – Case No. 2:23-cv-03478-GW

duty cycles are ***substantially the same*** but not identically the same.

19.    I note that Dr. Zane's IPR petition declaration—attached hereto as Exhibit A—had no issues with understanding this claim element and the meaning of "substantially."  For example, in referring to alleged prior art *Thomas reference*, Dr. Zane opined that "a POSITA would have understood that the resistance in *Thomas* 'draw[s] the peak current through its associated LEDs at a duty cycle substantially corresponding to a duty cycle of a PWM brightness control signal applied to it.'" Ex. A (Zane IPR Decl.) at ¶ 70, ¶ 93.  Zane further states that his own alleged prior art reference, *Zane article*, discloses limitation 1[d].  *Id*. at ¶¶ 156-157.  That is, on close examination of the operation of the actual circuit, Dr. Zane obviously understood that while the output current pulses flowing in three strings of LEDs are *substantially* the same, they are not *identically* the same as the input PWM brightness control signal due to real-world variations in components and line resistance/capacitance.

### (2)    *Equivalence of elements in Claim 1 versus Claim 14.*

20.    The following highlighted elements of Claim 1 and Claim 14 are instructive:

a. Claim 1: each current set circuit being configured to draw the peak current through its associated one or more LEDs at a duty cycle substantially corresponding to a duty cycle of a PWM brightness control signal applied to it, such that the plurality of current set circuits conduct current through their associated one or more LEDs at the same duty cycle but out of phase with each other.

b. Claim 14: drawing the peak current through the one or more LEDs in each parallel path, set by its associated current set circuit, at a duty cycle corresponding to a duty cycle of an associated PWM brightness control signal, such that the parallel paths of LEDs conduct current at substantially the same duty cycle but out of phase with each other.

21.    When examining the relevant elements of Claim 1 and Claim 14, a POSITA would understand that the meanings are equivalent. In both claims a peak current is drawn at an *output* duty cycle substantially the same as the *input* duty cycle of the PWM brightness control signal.  Claim 1 uses the modifier "substantially" to

7

DECLARATION OF THOMAS L. CREDELLE IN SUPPORT OF PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF – Case No. 2:23-cv-03478-GW

describe that the *output* duty cycle of the peak current is substantially the same as the *input* duty cycle of the PWM brightness control signal. Claim 14 uses the modifier "substantially" to describe the conducted current *output* duty cycle compared to the *input* duty cycle. A POSITA would understand that "conduct current at substantially the same duty cycle" in Claim 14 must refer to a comparison of the *output* duty cycle that is substantially the same as the *input* duty cycle.

22. In support of Defendants' position, the Gershowitz declaration asserts that a POSITA would apparently be confused by the fact that the output duty cycle (current flowing in LED strings) is only "substantially" the same as the input duty cycle from the PWM brightness control generator. Dkt. 69-3 (Gershowitz 1/29/2024 Decl.) at ¶ 61. I disagree. When the entirety of Claims 1 and 14 are read, there is no "broadening of scope" by the use of "substantially"; there is only an appreciation that the output duty cycle is not precisely the same as the input duty cycle.

## C. Term No. 4: "applying a different staggered PWM brightness control signals to each current set circuit" (claim 14)

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "applying a different staggered PWM brightness control signals to each current set circuit" | Plain and ordinary meaning. | Indefinite |

23. Claim 14, a method claim, comprises supplying voltages to a plurality of parallel paths of LEDs, i.e., strings of LEDs, setting a peak current in each parallel path of LEDs, generating staggered PWM brightness control signals, applying "a different PWM brightness control signals" to each current set circuit, and drawing current through each LED string at "substantially the same duty cycle" but out of phase with each other.

24. The Defendants have argued that the phrase "applying a different PWM brightness control signals to each current set circuit" is non-sensical and therefore indefinite. In fact, their arguments are non-sensical to a POSITA. They argue, incorrectly, that the letters "a" and "s" underlined and in red above render the claim

---
8

indefinite.

25.     Firstly, I note that the declaration submitted by Defendants' expert Dr. Regan Zane with the *inter partes* review petition in IPR2024-00073 had no issues with asserting that multiple out of phase PWM brightness control signals satisfied this claim element. *See* Ex. A (Zane IPR Decl.) at ¶¶ 64-66, ¶ 91, ¶¶ 153-155, ¶ 172. The *Thomas reference*, which Defendants assert as prior art, allegedly discloses staggered PWM brightness control signals E, F, G, and H in Fig. 3, reproduced below. Each PWM signal is alleged to be "a different staggered PWM brightness signals" applied to each current set circuit. That is, each and every current set circuit receives a staggered PWM brightness control signal. They are also "a different staggered PWM control signals" applied [collectively] to each current set circuit. That is, each and every current set control circuit receives a staggered PWM brightness control signal. While the language may be imperfect, a POSITA would understand that the meanings are the same, and Dr. Zane apparently agrees.



Ex. A (Zane IPR Decl.) at ¶¶ 64; Ex. B (*Thomas reference*) at Fig. 1 (annotated by Petitioner, further annotated in green).

9



*Fig. 3*

Ex. A (Zane IPR Decl.) at ¶ 66; Ex. B (*Thomas reference*) at Fig. 3 (annotated by Petitioner).

26.    Further, when Dr. Zane analyzes his own alleged prior art reference in the IPR petition—a graduate school article entitled "Digital Architecture for Driving Large LED Arrays with Dynamic Bus Voltage Regulation and Phase Shifted PWM" ("*Zane article*") (Ex. 1006 to IPR Petition)—Dr. Zane arrives at the same conclusion. Thus, there is no ambiguity in the alleged prior art teaching.



EX1006, Fig. 3 (annotated).

Ex. A (Zane IPR Decl.) at ¶ 153; Ex. C (*Zane article*) at Fig. 3 (annotated by Petitioner, further annotated in green).

10

27.    In support of Defendants' position, the Gershowitz declaration opines that the meanings are completely different and therefore the term is "nonsensical" and therefore indefinite. Dr. Gershowitz states that a POSITA would have a completely different understanding if either the "a" or "s" version is applied. Dkt. 69-3 (Gershowitz 1/29/2024 Decl.) at ¶¶ 64-71.  I disagree.

28.    First, Dr. Gershowitz opines that "applying a different staggered PWM brightness control signal~~s~~ to each current set circuit" ("a", not "s" version) can only mean that "each current set circuit receive a different staggered signal such that no two circuits receive the same signal."  *Id*. at ¶ 64.  A POSITA would understand that applying a different staggered signal to each string of LEDs (current set circuit) is covered by Claim 14 but that there is no requirement that they be identical (*see supra* Section IV.A).  Second, Dr. Gershowitz opines that "applying ~~a~~ different staggered PWM brightness control signals to each current set circuit " ("s," not "a" version) can only mean each current set circuit receives more than one staggered PWM brightness control signal…that are "still identical."  *Id*. at ¶ 69.  He wrongly asserts that this can only mean supplying different staggered PWM signals to each current set circuit and  string of LEDs.  While the supply of different staggered PWM signals to a current set circuit is within the scope of the invention, a POSITA would understand that this version of the phrase can equally mean simply that each current set circuit/LED string receives different staggered PWM brightness control signals.

**D.    Term Nos. 6 and 7: "wherein applying a different staggered PWM brightness control signal to each current set circuit comprises" (claim 16) / "applying a different staggered PWM brightness control signal to each current set circuit comprises applying each staggered PWM brightness control signals to an associated transistor" (claim 17)**

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "wherein applying a different staggered PWM brightness control signal to each current set circuit comprises" | Plain and ordinary meaning. | Indefinite |

11

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "applying a different staggered PWM brightness control signal to each current set circuit comprises applying each staggered PWM brightness control signals to an associated transistor" | | |

29.    Term Nos. 6 and 7 are not indefinite for the same reasons expressed as to Term No. 4 is Section IV.C *supra*.  A POSITA would understand that in Claim 16, the phrase "applying a different staggered PWM brightness control signal to each current set circuit" comprises coupling the PWM signal to a pass transistor that is connected to a control transistor to control current in the LED string ("a pass transistor 68 is controlled to be on or off the PWM brightness control signal") as shown in Fig. 5.  '148 patent at col. 5:58-6:6, Fig. 5.  Likewise, a POSITA would understand that in Claim 17, each of the staggered PWM brightness control signals are applied to transistors is series with the LEDs as shown in Fig. 6.  '148 patent at col. 6:7-16 ("The MOSFET 72 is controlled to be on or off by the PWM brightness control signal.").

30.    In support of Defendants' position, the Gershowitz declaration offers no additional opinions.

I declaration under penalty of perjury under the law of the United States of America that the foregoing is true and true and correct.

Executed on February 20, 2024.



_____

Thomas L. Credelle

12